UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY MCDANIEL, JR.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SST. ALTON, et al.,<br><br>　　　　Defendants. | Case No. CV 23-0878 SB (PVC)<br><br>**ORDER DISMISSING COMPLAINT WITH LEAVE TO AMEND** |

**I.**

**INTRODUCTION**

On January 31, 2023, Plaintiff Anthony McDaniel, Jr., a California state pretrial detainee proceeding *pro se*, constructively filed a civil rights complaint pursuant to 42 U.S.C. § 1983.[1] ("Complaint" or "Compl.," Dkt. No. 1). Plaintiff filed a request to proceed *in forma pauperis* ("IFP") on March 20, 2023, (Dkt. No. 7), which was granted on March 27, 2023. (Dkt. No. 8).

---

[1] The "mailbox rule" announced by the Supreme Court in *Houston v. Lack*, 487 U.S. 266 (1988), applies to section 1983 cases. *See Douglas v. Noelle*, 567 F.3d 1103, 1107 (9th Cir. 2009). Pursuant to the mailbox rule, *pro se* prisoner legal filings are deemed filed on the date the prisoner delivers the document to prison officials for forwarding to the court clerk. *Id*. The date in the signature block of the Complaint is January 31, 2023, which the Court adopts as this action's constructive filing date. (Compl. at 7).

1

Congress mandates that district courts perform an initial screening of complaints in civil actions where a prisoner seeks redress from a governmental entity or employee. 28 U.S.C. § 1915A(a). This Court may dismiss such a complaint, or any portions thereof, before service of process if it concludes that the complaint (1) is frivolous or malicious, (2) fails to state a claim upon which relief can be granted, or (3) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1-2); *see also Lopez v. Smith*, 203 F.3d 1122, 1126-27 & n.7 (9th Cir. 2000) (en banc). For the reasons stated below, the Complaint is DISMISSED with leave to amend.

## II.

## ALLEGATIONS OF THE COMPLAINT

Plaintiff sues two Ventura County Sheriff's Office ("VCSO") employees at the Ventura County Jail - Todd Road Facility: (1) Security Service Tech ("SST") Alton, badge number 3193; and (2) Senior Deputy Rawston, badge number 4554. (Compl. at 3).[2] Both Defendants are sued in their individual capacities only. (*Id.*).

The Complaint broadly alleges that Alton and Rawston put Plaintiff's health and safety at risk of serious injury, including "premature death," in violation of his Eighth Amendment rights. (*Id.*). Plaintiff states that he is asthmatic and has in the past suffered chest pains. (*Id.* at 5). Accordingly, it is important that he have the ability to contact jail staff in the event of an emergency by use of the medical emergency call button. (*Id.*).

Plaintiff claims that on January 16, 2023, Alton turned off the emergency call button so that he could not contact the service tech in charge. (*Id.*). Plaintiff states that he knows this to be true because he attempted to get the attention of the shift on the morning

---

[2] The Court will cite to the pages of the Complaint and its attachments as though they were consecutively paginated, following the electronic page numbers assigned by the Court's CM/ECF docketing system.

2

of January 17, 2023 (Alton and his service tech partner, SST Kelsey, badge number 2725) for over three hours. (*Id.*). Plaintiff ultimately had another inmate flag them down to notify them that he had an issue. (*Id.*).

Two other service technicians, Lawrence and Hackworth, told Plaintiff that there is no reason to disengage the emergency call button. (*Id.* at 6). Lawrence also told Plaintiff that a tag had been placed on his emergency call button, but refused to "go into any details" when Plaintiff asked him what the tag means. (*Id.*).

Plaintiff filed a grievance regarding the disengagement of the emergency call button on January 16 and 17, 2023 in which he insisted that turning off the button put him directly at risk because of his medical history. (*Id.* at 6, 9). Rawston responded to the grievance on January 21, 2023. (*Id.* at 8).

Although Lawrence told Plaintiff that there is no reason to turn off an emergency call button, thereby implying that it *can* be turned off, Rawston, in his response to Plaintiff's grievance, stated that "it is impossible for an SST to 'turn off' an emergency call button." (*Id.*; *see also id.* at 8 (copy of grievance response)). Plaintiff contends that "by this statement, [Rawston] chose not to respond to my direct grievance in regards to the violation, by his staff." (*Id.* at 6).

In the copy of the grievance and the grievance resolution form attached as an exhibit to the Complaint, Plaintiff claims that Alton turned off his emergency call button on the morning of January 16, 2023 in retaliation for "us having words stemming from an issue [Plaintiff] had with him during morning inspection." (*Id.* at 9).[3] Plaintiff further

---

[3] When reviewing a pleading to determine whether it states a claim under Federal Rule of Civil Procedure 12(b)(6), a court may consider not only the allegations in the complaint, but also "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *accord Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 884

3

states: "Although I admit to using the call button to continue the conversation that I was extremely irritated by, it's still in it's self [sic] on it's face is [sic] unprofessional and irresponsible to turn off the emergency com. for over the entire day and night . . . ." (*Id.*). The grievance also alleges that even though Lawrence and Kelsey restored the emergency button on the morning of the 17th, Plaintiff's health and safety were at risk while the button was inoperative. (*Id.*).

In the response to the grievance, Rawston states that Alton issued a minor write up against Plaintiff on the date of the incident because Plaintiff was not fully dressed for the morning cell inspection, in violation of the jail's rules. (*Id.* at 8). The minor write up resulted in a major write up only because Plaintiff had received three prior minor write ups. (*Id.*). The response further states: "Instead of consistently and violating jail policy [sic] by hitting the emergency button, for a non-medical emergency, you should have saved your defense for the major disciplinary hearing you would have with a Senior Deputy. That is the appropriate time to have a discussion about the major write up you received." (*Id.*). Rawston further asserted that it is impossible for an SST to turn off an emergency call button. (*Id.*). Finally, he concluded that Alton was not retaliating against Plaintiff and did not show any misconduct during the incident. (*Id.*).

In the prayer for relief, Plaintiff seeks monetary damages of $10,000 for the violation of his Eighth Amendment rights. (*Id.* at 7).

### III.
### DISCUSSION

Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss Plaintiff's Complaint

---

(9th Cir. 2022). Because Plaintiff's grievance and Rawston's response are put at issue in the Complaint and attached to it, the Court may consider it here.

due to defects in pleading. *Pro se* litigants in civil rights cases, however, must be given leave to amend their complaints unless it is absolutely clear that the deficiencies cannot be cured by amendment. *See Lopez*, 203 F.3d at 1128-29. Accordingly, the Court grants leave to amend.

### A. Eighth Amendment Cruel And Unusual Punishment Claims Against Alton And Rawston

Although Plaintiff repeatedly asserts that Alton and Rawston violated his Eighth Amendment rights, because he appears to be a pre-trial detainee who is not currently incarcerated pursuant to a conviction, the constitutional claims he asserts arise under the Due Process Clause of the Fourteenth Amendment. *See Graham v. Connor*, 490 U.S. 386, 393 & n.6 (1989) (Eighth Amendment's prohibition of "cruel and unusual punishments" applies only "after conviction and sentence"); *Stone v. City of San Francisco*, 968 F.2d 850, 857 n.10 (9th Cir. 1992) ("[P]retrial detainees . . . possess greater constitutional rights than prisoners."); *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) ("[P]retrial detainees are accorded no rights under the Eighth Amendment. Instead, their rights arise under the Due Process Clause of the Fourteenth Amendment.") (internal citations omitted); *Shorter v. Baca*, 895 F.3d 1176, 1183 (9th Cir. 2018) (the "more protective" Fourteenth Amendment standard applies to detainees who have not yet been convicted of a crime). Accordingly, Plaintiff's Eighth Amendment claims summarily fail.

To the extent that Plaintiff asserts that Defendants unconstitutionally put his health and safety at unnecessary risk, the Ninth Circuit instructs that the elements of a pretrial detainee's Fourteenth Amendment claim are:

(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the

    plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved -- making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" [*Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016)] (quoting [*Kingsley v. Hendrickson*, __ U.S. __, 135 S. Ct. 2466, 2473 (2015)]; *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The "'mere lack of due care by a state official' does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Id.* (quoting [*Daniels v. Williams*, 474 U.S. 327, 330-31 (1986)). Thus, the plaintiff must "prove more than negligence but less than subjective intent -- something akin to reckless disregard." *Id.*

*Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018) (parallel citations and footnote omitted); *see also Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 600 (9th Cir. 2019) (the Fourteenth Amendment provides "an entirely objective standard for [claims by] pretrial detainees").

    Therefore, to state a due process claim, Plaintiff must allege facts showing that: each Defendant, with respect to each incident, made an "intentional decision" about how to handle Plaintiff's health or safety; those decisions placed Plaintiff at substantial risk of serious harm and were objectively unreasonable; and as a result, Plaintiff was actually harmed. It is not enough for Plaintiff to complain that Defendants collectively provided inadequate or substandard care or protection; Plaintiff must show that each Defendant

separately made an objectively unreasonable decision regarding his health and/or safety that resulted in actual harm. *See Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 308 (1986) (absent proof of actual injury, plaintiff in § 1983 lawsuit is not entitled to compensatory damages).

Even if Plaintiff had alleged his claims under the Fourteenth Amendment instead of the Eighth Amendment, they would still fail to state a claim. Plaintiff alleges that Alton unconstitutionally turned off his emergency call button on January 16, 2023, and that Plaintiff learned of the deactivation on the morning of January 17, 2023, when he tried to use the emergency button for three hours to "get [the] attention of the shift." (Compl. at 5). However, Plaintiff fails to plead any facts showing that he was harmed by Alton's alleged action. Plaintiff does not allege that he suffered an asthmatic episode on January 16 or 17, 2023 and required immediate medical attention, which he was unable to summon because his emergency button did not work. Plaintiff does not even allege that he *knew* about the alleged deactivation until the day after the emergency button was allegedly turned off, when he wished to get the attention of the shift. Although the Complaint does not expressly explain why Plaintiff wished to get the attention of staff on the morning of January 17, 2023, based on the facts asserted in Plaintiff's grievance, the reason appears to have been to complain about the write up he was given by Alton, not a medical emergency. Alton expressly admits in his grievance that he was "using the call button to continue the conversation [with Alton] that [he] was extremely irritated by . . . ." (*Id*. at 9). In sum, even accepting as true that Alton deactivated the emergency call button, at most Plaintiff alleges that he might theoretically have been harmed by the deactivation of the emergency call button *if* he had required medical assistance, even though he did not in fact suffer a medical emergency while the button was inoperative. In the absence of any actual medical emergency that was worsened by Plaintiff's inability to contact staff by use of the emergency call button, the Complaint fails to identify any actual harm Plaintiff suffered. Instead, the facts alleged in the Complaint strongly suggest that

7

Plaintiff was abusing the emergency call button for a non-medical purpose. This fails to state an actual injury for purposes of a due process claim.

Plaintiff also fails to allege that Rawston caused an actual injury. The only allegations against Rawston concern his response to Plaintiff's grievance. The grievance itself was necessarily filed *after* the incident at issue in this action was over and Plaintiff's emergency call button had been reactivated. Accordingly, even if the deactivation of the emergency call button had harmed Plaintiff, which it did not, Rawston's response to the grievance, served on Plaintiff days after the event, (*see* Compl. at 8), logically could not have *caused* the injury. The only wrong Rawston allegedly committed is that he authored a grievance response that Plaintiff found unsatisfactory, which fails to establish an actual injury to Plaintiff's health or safety. Furthermore, as the Court will explain in Part C below, complaints about a facility's grievance process fail to state a constitutional claim.

Plaintiff fails to state a Fourteenth Amendment claim against either Alton or Rawston involving actual injuries to his health or safety. Accordingly, the Complaint is dismissed, with leave to amend.

      **B.**      **First Amendment Retaliation Claim Against Alton**

Although Plaintiff does not expressly allege a First Amendment claim in the Complaint, his grievance asserts that "Alton turned off [his] 'emergency com. call button' in a manner of retaliation behind the two of us having words stemming from an issue I had with him during morning inspection." (Compl. at 9). To the extent that Plaintiff may be attempting to assert a First Amendment retaliation claim, the claim fails.

The Ninth Circuit has set forth the minimum pleading requirements for a § 1983 claim alleging retaliation against an inmate for exercising a First Amendment right:

8

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*See Rhodes v. Robinson*, 408 F.3d 559, 567-568 (9th Cir. 2005) (footnote omitted); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009); *Safouane v. Fleck*, 226 F. App'x 753, 764 (9th Cir. 2007), as amended on denial of reh'g and reh'g en banc (July 26, 2007) ("[W]e have applied the same standards for [pretrial] detainees as for prisoners in considering First Amendment claims, since many of the same interests and principles apply . . . .") (internal citations omitted); *Nyland v. Calaveras Cnty. Sheriff's Jail*, 688 F. App'x 483, 485 (9th Cir. 2017) (applying *Rhodes* factors to pretrial detainee's First Amendment claim). The inmate must establish a specific link between the alleged retaliation and the exercise of a constitutional right. *See Pratt v. Rowland*, 65 F.3d 802, 807-08 (9th Cir. 1995); *see also Wood v. Beauclair*, 692 F.3d 1041, 1051 (9th Cir. 2012) ("To establish a claim for retaliation, a prisoner must show that a prison official took some adverse action against an inmate because of that prisoner's protected conduct, that the action chilled the inmate's exercise of his constitutional rights, and the action did not advance a legitimate correctional goal.").

To the extent that Plaintiff may have been attempting to state a retaliation claim, the claim fails because Plaintiff has not alleged facts showing that he was retaliated against for having engaged in a constitutionally protected activity. Plaintiff alleges that Alton retaliated against him because they exchanged "words" regarding the morning inspection. However, Plaintiff does not say what those "words" were, describe whether they included threats of violence or were permitted or prohibited by a prison regulation, or

9

otherwise establish that what he said to Alton was constitutionally protected speech.  An inmate retains First Amendment free speech rights not inconsistent with his status as a prisoner or detainee and with the legitimate penological objectives of the corrections system.  *See Shaw v. Murphy*, 532 U.S. 223, 231 (2001); *Clement v. California Dep't of Corr.*, 364 F.3d 1148, 1151 (9th Cir. 2004).  However, jail personnel may regulate speech if such restriction is reasonably related to legitimate penological interests and an inmate is not deprived of all means of expression.  *Valdez v. Rosenbaum*, 302 F.3d 1039, 1048 (9th Cir. 2002) ("While it is clear that the First Amendment right of free speech applies within prison walls . . . [a] prison regulation that impinges on an inmate's constitutional right 'is valid if it is reasonably related to legitimate penological interests.'") (quoting *Turner v. Safley*, 482 U.S. 78, 92 (1986)).  Rawston's grievance response suggests that the proper time and place for Plaintiff to have raised any challenges to his major write up would have been during the disciplinary hearing before a Senior Deputy.  (Compl. at 8).

Plaintiff fails to allege facts establishing that his free speech rights were violated in a way inconsistent with his status as a pretrial detainee and contrary to legitimate penological objectives.  As such, he fails to state a First Amendment violation.  Accordingly, the Complaint is dismissed, with leave to amend.

C. **Fourteenth Amendment Grievance Claim Against Rawston**

As noted above, Plaintiff's sole allegations against Rawston concern his response to Plaintiff's grievance.  Even though Plaintiff does not clearly allege why he was dissatisfied with Rawston's grievance response or describe the relief he was hoping to receive, it would not have mattered if he did.  Inmates simply do not have a constitutional right to any particular grievance process, much less to any particular grievance outcome.

A prisoner must "exhaust his administrative remedies before filing a lawsuit

concerning prison conditions." *Sapp v. Kimbrell*, 623 F.3d 813, 821 (9th Cir. 2010) (citing 42 U.S.C. § 1997e(a)). However, the denial of an administrative grievance or claim, without more, is insufficient to establish a civil rights violation because there is no constitutional right to a particular grievance process or outcome. *See Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (the denial of or failure to respond to administrative grievances will not support a civil rights claim); *Nelson v. Giurbino*, 395 F. Supp. 2d 946, 956 (S.D. Cal. 2005) (allegations regarding denial of administrative appeal do not state a claim because "there is no legal entitlement to a grievance procedure"). Accordingly, a plaintiff "cannot state a constitutional claim based on his dissatisfaction with the grievance process. Where the defendant's only involvement in the allegedly unconstitutional conduct is 'the denial of administrative grievances or the failure to act, the defendant cannot be liable under § 1983.'" *Grenning v. Klemme*, 34 F. Supp. 3d 1144, 1157 (E.D. Wash. 2014) (quoting *Shehee*, 199 F.3d at 300).

Plaintiff does not allege facts showing that Rawston had any involvement in the incident at issue beyond denying Plaintiff's grievance. That is an insufficient ground to state a constitutional claim. Accordingly, the Complaint is dismissed, with leave to amend.

## IV.
## CONCLUSION

For the reasons stated above, the Complaint is dismissed with leave to amend. If Plaintiff still wishes to pursue this action, he must file a First Amended Complaint within **thirty (30) days from the date of this Order**. In any amended complaint, Plaintiffs shall cure the defects described above. If Plaintiff chooses to file a First Amended Complaint,

11

he must clearly designate on the face of the document that it is the "First Amended Complaint." The First Amended Complaint must bear the docket number assigned to this case, and it must be retyped or rewritten in its entirety. Plaintiff shall not include new defendants or allegations that are not reasonably related to the claims asserted in the Complaint. *See Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (denial of leave to amend not abuse of discretion where proposed new claims would have "greatly altered the nature of the litigation" and required defendants to undertake "an entirely new course of defense"); *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (affirming denial of leave to amend where additional claims "advance different legal theories and require proof of different facts"). In addition, the First Amended Complaint must be complete in and of itself, without reference to the original Complaint, or any other pleading, attachment, or document.

An amended complaint entirely takes the place of the preceding complaint. *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992). After amendment, the Court will treat any preceding complaint, including any exhibits attached to the preceding complaint, as nonexistent. *Id.* If Plaintiff wishes the Court to consider any exhibits from the original Complaint, he must re-attach them to the First Amended Complaint. Because the Court grants Plaintiff leave to amend all the claims raised here, any claim raised in the original Complaint is waived if it is not raised again in the First Amended Complaint. *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012).

In any amended complaint, Plaintiff should confine his allegations to the essential facts supporting each of his claims. Plaintiff is strongly encouraged to keep his statements concise and to omit irrelevant details. Plaintiff is advised that pursuant to Federal Rule of Civil Procedure 8(a), all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief." **Plaintiff is strongly encouraged to use the standard civil rights complaint form when filing any amended complaint, a copy of**

**which is attached.** In any amended complaint, Plaintiff must describe, to the extent possible, what each separate Defendant, including each separate Doe Defendant, if any, did to violate his rights; where and when the wrongful conduct occurred; the harm that Plaintiff suffered from the Defendant's acts and omissions; and the constitutional right or statute that each Defendant violated. It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff is also advised to omit any claims for which he lacks a sufficient legal or factual basis.

The Court cautions Plaintiff that it generally will not be inclined to grant further opportunities to amend if the First Amended Complaint continues to assert claims for which relief cannot be granted for the reasons explained in this Order. "[A] district court's discretion over amendments is especially broad 'where the court has already given a plaintiff one or more opportunities to amend his complaint.'" *Ismail v. Cnty. of Orange*, 917 F. Supp. 2d 1060, 1066 (C.D. Cal. 2012) (quoting *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987)); *see also Cafasso*, 637 F.3d at 1058 ("[T]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint.") (internal quotation marks omitted). Thus, if Plaintiff files a First Amended Complaint with claims that repeat the same pleading defects addressed in this Order, the Court may recommend that the First Amended Complaint be dismissed with prejudice for failure to state a claim.

Instead of filing a First Amended Complaint, Plaintiff may choose to stand on the defective claims in the original Complaint, but must expressly notify the Court in writing of his intention to do so by the same deadline for filing an amended complaint, *i.e.*, thirty days from the date of this Order. Plaintiff is cautioned, however, that when a plaintiff chooses to stand on a defective complaint despite having been afforded the opportunity to amend, the district court may dismiss any defective claims under Federal Rule of Civil Procedure 12(b)(6) and allow the action to proceed only on the surviving claims, if any,

that sufficiently state a claim. *See Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1065 (9th Cir. 2004). Plaintiff is advised that if he elects to stand on the defective claims in his original Complaint, the Magistrate Judge will recommend that the Court dismiss some or all of his claims for the reasons stated in this Order. *See McCalden v. California Library Ass'n*, 955 F.2d 1214, 1224 (9th Cir. 1992) (a plaintiff granted leave to amend a pleading "may elect to stand on her pleading and appeal"); *Edwards*, 356 F.3d at 1065 ("When the plaintiff timely responds with a formal notice of his intent not to amend, the threatened dismissal merely ripens into a final, appealable judgment.").

Accordingly, Plaintiff is ORDERED to file either a First Amended Complaint or a Notice of Intention to Stand on Defective Complaint within thirty days of the date of this Order. **Plaintiff is explicitly cautioned that the failure to file either a First Amended Complaint or a Notice of Intention to Stand on Defective Complaint by the Court's deadline *will* result in a recommendation that this action be dismissed with prejudice for failure to prosecute and obey court orders pursuant to Federal Rule of Civil Procedure 41(b).** *See Applied Underwriters, Inc. v. Lichtenegger*, 913 F.3d 884, 891 (9th Cir. 2019) ("'The failure of the plaintiff eventually to respond to the court's *ultimatum* -- either by amending the complaint or by indicating to the court that it will not do so -- is properly met with the sanction of a Rule 41(b) dismissal.'") (quoting *Edwards*, 356 F.3d at 1065) (emphasis in original). Plaintiff is further advised that if he no longer wishes to pursue this action, he may voluntarily dismiss it by filing a Notice of Dismissal in accordance with Federal Rule of Civil Procedure 41(a)(1). **A form Notice of Dismissal is attached for Plaintiff's convenience.**

DATED: April 10, 2023

PEDRO V. CASTILLO
UNITED STATES MAGISTRATE JUDGE